UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.,

        Plaintiff,

v.

THS PARTNERS I, INC. d/b/a Whitehall
Healthcare Center of Novi and d/b/a Fenton
Healthcare; THS PARTNERS II, INC.
d/b/a Whitehall Healthcare Center of Novi
and d/b/a Fenton Healthcare; WHITEHALL
OF NOVI HEALTHCARE, LLC d/b/a
Whitehall Healthcare Center of Novi; and
FENTON HEALTHCARE, LLC d/b/a
Fenton Healthcare,

        Defendants.
_____/

File No. _____

Hon. _____

Brad Dembs (P76692)
Chris E. Davis (P52159)
MICHIGAN PROTECTION & ADVOCACY
SERVICE, INC.
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
Phone: (517) 487-1755
_____/

**COMPLAINT**

## INTRODUCTION

1. Plaintiff, Michigan Protection & Advocacy Service, Inc. (MPAS), brings this action for declaratory and injunctive relief pursuant to 42 U.S.C. §§ 10807-10827, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI); 42 U.S.C. §§ 15041-15045, Developmental Disabilities Assistance and Bill of Rights Act of 2000 (DD); and 29 U.S.C. § 794e, the Protection and Advocacy of Individual Rights (PAIR), Program of the Rehabilitation Act of 1973.

2. MPAS challenges Defendants' failure to disclose documents and information relating to the abuse/neglect investigation of patients residing in its nursing home facilities.

3. This information was requested by Plaintiff and disclosure is required by the PAIMI, DD, and/or PAIR Acts.

4. Regardless of the specifics of the individuals' disabilities, MPAS has access authority under at least one of the PAIMI, DD, or PAIR Acts.

5. MPAS is charged with the responsibility, both under federal and state law, to investigate allegations of abuse and neglect against persons with disabilities.

6. Defendants' failure to provide the documents and information at issue has interfered with Plaintiff's investigative responsibilities and resulted

in Plaintiff being denied its rights pursuant to the PAIMI, DD, and PAIR Acts to investigate the suspected incidents of abuse and neglect.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Plaintiff's federal claims are made pursuant to 42 U.S.C. §§ 10801-10827; 42 U.S.C. §§ 15041-15045; and 29 U.S.C. § 794e.

9. Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201, 2202.

10. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b), as all of the events and omissions complained of below occurred in this district.

## PARTIES

11. Plaintiff, MPAS, is a Michigan non-profit corporation.

12. The Governor of Michigan has designated MPAS as the state's protection and advocacy system, pursuant to MCL 330.1931 with the responsibility to enforce and carry out the federal mandates under the PAIMI, DD, and PAIR Acts.

13. As the state's protection and advocacy system, MPAS has a duty to investigate allegations of abuse and neglect of persons with disabilities. MCLA 330.1931(2).

14. Upon information and belief, Defendants THS Partners I, Inc. and THS Partners II, Inc. are foreign profit corporations conducting business in Michigan under the assumed names of Whitehall Healthcare Center of Novi (Whitehall) and Fenton Healthcare (Fenton).

15. Upon information and belief, Defendant Whitehall of Novi Healthcare, LLC is a foreign limited liability company conducting business in Michigan under the assumed name of Whitehall Healthcare Center of Novi.

16. Upon information and belief, Defendant Fenton Healthcare, LLC is a foreign limited liability company conducting business in Michigan under the assumed name of Fenton Healthcare.

17. Upon information and belief, Whitehall Healthcare Center, which Defendants own and operate, is a nursing home located in Novi, Michigan, in Oakland County.

18. Upon information and belief, Fenton Healthcare, which Defendants own and operate, is a nursing home located in Fenton, Michigan, in Genesee County.

19. Consulate Health Care, according to its website, operates and/or owns Defendants Whitehall and Fenton.  http://www.consulatemgt.com/locations/state/MI (accessed 10-8-13).  *Ex A.*

20. Plaintiff's counsel has done a business entity search with the Michigan Department of Licensing and Regulatory Affairs (LARA) but no business entity using the name "Consulate" or "Consulate Health Care" was registered or registered as a "doing business as" in the State of Michigan despite Consulate Health Care's website claim that it operates 10 nursing home or healthcare centers in the State of Michigan.  The other facilities are:

    a.    Cypress Manor Health and Rehabilitation Center, Hancock, MI;

    b.    Hilltop Manor Health Care Center, Roscommon, MI;

    c.    Mather Nursing Center, Ishpeming MI;

    d.    Ovid Healthcare Center, Ovid, MI;

    e.    Pine River Healthcare Center, St. Louis, MI;

    f.    Transitional Health Services of Fremont, Fremont, MI;

      g.      Transitional Health Services of Wayne, Wayne, MI; and

      h.      Whitehall Healthcare Center of Ann Arbor, Ann Arbor, MI.

21. Plaintiff reserves the right to amend its complaint and add Consulate Health Care as a Defendant in this matter once Plaintiff knows Consulate's ownership and management relationship to the other Defendants.

## FACTS

### A. Allegations Relating To Whitehall Healthcare Center of Novi

22. On or about May 6, 2013, MPAS learned of allegations of abuse/neglect against an individual who was a patient at Whitehall, through a partial extended survey completed by the Michigan Department of LARA's Bureau of Health Care Services.

23. The survey, dated March 29, 2013 identified the alleged victim only as Resident #117.

24. Based on this partial extended survey of Whitehall, MPAS determined that Resident #117 had been diagnosed with both physical and non-physical disabilities. Specifically, Resident #117 had a medical history of schizophrenia, pneumonia, congestive heart failure, cellulitis, and muscle weakness.

25. According to the survey, Resident #117 suffered from cardiac arrest on March 25, 2013, however Whitehall staff did not initiate cardiopulmonary resuscitation (CPR) despite having documented authorization to provide such life-saving measures, in violation of facility policy. Resident #117 died as a result of this incident.

26. Based on these facts, MPAS determined it had probable cause, as the state's protection and advocacy system, to open an investigation into the possible abuse and/or neglect of people with disabilities residing at Whitehall, specifically Resident #117.

27. On May 6, 2013, an advocate from MPAS sent a letter to Whitehall administrator Alan Winer, requesting specific records related to Resident #117.

28. MPAS sent the letter by United States Postal Service Certified Mail (return receipt). It was received by Whitehall on May 9, 2013, and signed for by Whitehall employee Tamara Scruggs.

29. Defendants made no disclosure of records, nor acknowledged the request in any way.

30. On May 28, 2013, an advocate from MPAS sent a second records request letter to Whitehall. The letter reiterated MPAS' access authority and the purpose of the request for records.

31. MPAS sent the letter by United States Postal Service Certified Mail (return receipt). It was received by Whitehall on May 31, 2013, and signed for by Whitehall employee, C. Kinson.

32. As no response was forthcoming, an MPAS attorney followed up with a phone call to Mr. Winer on June 19, 2013. Mr. Winer would not confirm whether he had a copy of the original records request and MPAS agreed to fax him another copy.

33. MPAS was then put in contact with Erin DuBois, Associate Corporate Counsel for Mancuso & Dias, P.A., corporate counsel to Whitehall. On June 20, 2013 an MPAS attorney spoke with Ms. DuBois over the phone and sent her an email including a copy of MPAS' original records request.

34. Approximately one month later, on July 16, 2013, MPAS received a letter from Ms. DuBois denying the May 6, 2013 records request in full.

35. As of the date of this filing, MPAS has not received any of the requested records.

**B. Allegations Relating To Fenton Health Care**

36. On or about August 1, 2013, MPAS learned of allegations of abuse/neglect against several individuals who were patients at

Fenton, through a partial extended survey completed by the Michigan Department of LARA's Bureau of Health Care Services.

37. The survey was dated June 13, 2013, and identified the alleged victims only as Resident #103, Resident #104, Resident #105, and Resident #106.

38. Based on this partial extended survey of Fenton, MPAS determined that Resident #103, Resident #104, Resident #105, and Resident #106 had been diagnosed with physical or non-physical disabilities, or both.

   a. Resident #103 had diagnoses of atrial fibrillation, chronic obstructive pulmonary disease (COPD), congestive heart failure, and morbid obesity.

   b. Resident #104 had diagnoses of chronic obstructive pulmonary disease (COPD), osteoarthritis, and morbid obesity.

   c. Resident #105 had diagnoses of high blood pressure, anxiety disorder, depression, fatigue, and muscle weakness.

   d. Resident #106 had diagnoses of chronic renal insufficiency, chronic bronchitis, degenerative arthritis, hypertension, and anxiety.

9

39. According to the survey, no Advance Directives or care plans were developed for Resident #103 or Resident #106, among others. Emergency Medical Services were not initiated immediately, nor within a reasonable time, for Resident #103, Resident #104, Resident #105, or Resident #106. As a result, Resident #103 died and all other residents were placed at risk of serious harm, injury, or death.

40. Based on these facts, MPAS determined it had probable cause, as the state's protection and advocacy system, to open an investigation into the possible abuse and/or neglect of people with disabilities residing at Fenton, specifically Resident #103, Resident #104, Resident #105, and Resident #106.

41. On August 2, 2013, an advocate from MPAS sent a letter to Fenton Administrator Holly Stambersky requesting specific records related to Resident #103, Resident #104, Resident #105, and Resident #106.

42. MPAS sent the letter by United States Postal Service Certified Mail (return receipt). It was received by Fenton on August 5, 2013, and signed for by Fenton employee, Diane Gierucki.

43. Defendants made no disclosure, nor acknowledged the request for records in any way.

44. On August 27, 2013, an advocate from MPAS sent a second records request letter to Fenton. The letter reiterated MPAS' access authority and the purpose of the request for records.

45. MPAS sent the letter by United States Postal Service Certified Mail (return receipt). It was received by Fenton on August 30, 2013 and signed for by Fenton employee, Diane Gierucki.

46. As of the date of this filing, MPAS has not received any of the requested records.

## COUNT I – VIOLATION OF THE PAIMI ACT

47. Plaintiff incorporates and re-alleges paragraphs 1 through 46, as if fully set forth herein.

48. MPAS, as Michigan's designated protection and advocacy system, has the right to access all record of individuals to which the PAIMI Act applies when conducting abuse and neglect investigations. 42 U.S.C. §§ 10805(a)(4), 10806(b)(3).

49. The PAIMI Act applies to Whitehall Healthcare Center and Fenton Healthcare. 42 U.S.C. § 10802(3).

50. Upon information and belief, the PAIMI Act applies to Resident #117 from the March 29 survey as well as Resident #105 and Resident

#106 from the June 13 survey, due to each patient's residence in a facility and their diagnoses. 42 U.S.C. § 10802(4).

51. Based on survey results, MPAS determined it had probable cause to open an investigation as the state's protection and advocacy system, into the possible abuse and/or neglect of persons with disabilities. 42 U.S.C. § 10805(a)(1)(A).

52. This determination of probable cause is within the discretion of MPAS alone. 62 FR 53553. See *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689 (D. Az. 2000) ("the P&A is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.")

53. Defendant's failure to provide Plaintiff with the requested records, relating to the allegations of abuse and/or neglect of residents of Whitehall and Fenton, violates MPAS' rights under the PAIMI Act. 42 U.S.C. §§ 10801-10827.

54. The incidents at issue fall clearly within the Act's definitions of abuse or neglect. 42 U.S.C. § 10802(1), (5).

55. According to the Act, MPAS "shall have reasonable access and authority to . . . examine all relevant records of any facility service recipient or employee." 42 C.F.R. 51.41(d).

12

56. MPAS is also entitled to incident reports prepared by a facility rendering care or treatment, in whatever format they are kept. This includes reports that describe abuse, neglect, or injury occurring at the facility, the steps taken to investigate the incidents, personnel records and supporting information relied upon in creating a report, and records describing persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings. 42 C.F.R. § 51.41.

57. The PAIMI Act requires prompt written justification if a request is denied for lack of authorization, as well as provision of contact information for a resident or his or her legal representative. 42 C.F.R. § 51.43.

58. Defendants did not promptly respond to MPAS' records requests for Whitehall Healthcare Center.

59. No information on residents' guardians or conservators was included in their delayed response.

60. In addition, MPAS received no reply to its requests for documentation relating to patients and incidents at Fenton Healthcare.

61. Defendants' actions frustrate, impinge, and prevent MPAS from meeting its responsibilities under federal and state law to investigate allegations of abuse and/or neglect of individuals with mental illness.

62. MPAS has no adequate remedy at law.

## COUNT II – VIOLATION OF THE DD ACT

63. Plaintiff incorporates and re-alleges paragraphs 1 through 62, as if fully set forth herein.

64. As Michigan's designated protection and advocacy system, MPAS has the right to access all records of individuals to which the DD Act applies when conducting abuse and neglect investigations.  42 U.S.C. § 15043.

65. The DD Act applies to Whitehall Healthcare Center and Fenton Healthcare.  42 U.S.C. § 15043(2)(B).

66. Upon information and belief, the DD Act applies to Resident #117 from the March 29 survey as well as Resident #103, Resident #104, Resident #105, and Resident #106 from the June 13 survey, due to each patient's residence in a facility and their diagnoses.  42 U.S.C. § 15002(8).

67. Based on survey results, MPAS determined it had probable cause to open an investigation, as the state's protection and advocacy system,

14

into the possible abuse and/or neglect of persons with disabilities. 42 U.S.C. § 5043(a)(2)(B).

68. This determination of probable cause is within the discretion of MPAS alone. See *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689 (D. Az. 2000) ("the P&A is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.")

69. Defendants' failure to provide Plaintiff with the requested records, relating to the allegations of abuse and/or neglect of residents of Whitehall and Fenton, violates MPAS' rights under the DD Act, 42 U.S.C. § 15043.

70. The incidents at issue fall clearly within the Act's definitions of abuse or neglect. 45 C.F.R. § 1386.19.

71. P&A systems must have access to individual records "prepared or received in the course of providing intake, assessment, evaluation, education, training and other supportive services, including medical records, financial records, and monitoring and other reports prepared or received by a member of the staff of a facility that is providing care or treatment." 45 C.F.R. § 1386.22(b).

72. MPAS is also entitled to incident reports prepared by a facility rendering care or treatment, in whatever format they are kept. This includes reports that describe abuse, neglect, or injury occurring at the facility, the steps taken to investigate the incidents, personnel records and supporting information relied upon in creating a report, and records describing persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.  45 C.F.R. § 1386.22.

73. The DD Act requires prompt written justification if a request is denied for lack of authorization, as well as provision of contact information for a resident or his or her legal representative.  42 C.F.R. § 51.43.

74.  Defendants did not promptly respond to MPAS' records requests for Whitehall Healthcare Center.

75. No information on residents' guardians or conservators was included in their delayed response.

76. In addition, MPAS received no reply to its requests for documentation relating to patients and incidents at Fenton Healthcare.

77. Defendants' actions frustrate, impinge, and prevent MPAS from meeting its responsibilities under federal and state law to investigate

16

allegations of abuse and/or neglect of individuals with developmental disabilities.

78. MPAS has no adequate remedy at law.

## COUNT III – VIOLATION OF THE PAIR ACT

79. Plaintiff incorporates and re-alleges paragraphs 1 through 78, as if fully set forth herein.

80. As Michigan's designated protection and advocacy system, MPAS has the right to access all records of individuals to which the PAIR Act applies when conducting abuse and neglect investigations. 29 U.S.C. § 794e, and 42 U.S.C. §15043.

81. Upon information and belief, if the patients named above are not covered by the DD Act or the PAIMI Act, they are covered under the PAIR Act. 29 U.S.C. § 794e(a)(1)(B).

82. Based on survey results, MPAS determined it had probable cause to open an investigation, as the state's protection and advocacy system, into the possible abuse and/or neglect of persons with disabilities.

83. This determination of probable cause is within the discretion of MPAS alone. See *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689 (D. Az. 2000) ("the P&A is the final arbiter of probable cause for the

purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect.")

84. Defendants' failure to provide Plaintiff with the requested records, relating to the allegations of abuse and/or neglect of residents of Whitehall and Fenton, violates MPAS' rights under the PAIR Act. 29 U.S.C. § 794e.

85. Defendants' actions frustrate, impinge and prevent MPAS from meeting its responsibilities under federal and state law to investigate allegations of abuse and/or neglect of individuals with disabilities.

86. MPAS has no adequate remedy at law.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

A. Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201, declaring that Defendants' actions and omissions violate the PAIMI, DD, and/or PAIR Act(s) by:

    i)    Denying Plaintiff access to patient records; and

    ii)   Preventing MPAS from fully performing its statutory duty to investigate incidents of suspected abuse and/or neglect of individuals with disabilities;

B. Enter permanent injunctive relief, pursuant to 28 U.S.C. § 2202, requiring Defendants to provide MPAS any and all reports, documents, and records pertaining to the patients and alleged incidents in question;

C. Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of the PAIMI, DD and PAIR Acts;

D. Award Plaintiff costs; and

E. Order such other, further, or different relief as the Court deems equitable and just.

                                              Respectfully submitted,

Dated: November 4, 2013        s/Brad Dembs
                                        Michigan Protection & Advocacy Service, Inc.
                                        4095 Legacy Parkway, Ste. 500
                                        Lansing, MI 48911
                                        (517) 487-1755
                                        bdembs@mpas.org
                                        P76692